**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. ____________________**

**SHENZHEN EL LIGHTING TECHNOLOGY CO., LTD, a Shenzhen Company,**

**Plaintiff,**

**v.**

**MIDWEST TRADING GROUP, INC., an Illinois Corporation,**

**Defendant.**

---

**COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND**

---

COME NOW Shenzhen EL Lighting Technology Co., LTD ("Plaintiff") for its Complaint against Defendant Midwest Trading Group, Inc. ("Defendant"), through counsel, BRADFORD, LTD, assert the following claims:

## JURISDICTION AND VENUE

1. Yin Zhengkai and Lu Zumi filed United States Patent Application 10/664,675 on September 18, 2003, an application that matured into United States Patent Number 6,960,725 B2 entitled "Electroluminescence (EL) Tube and Wire and Manufacturing Method" (the "'725 Patent") on November 1, 2005.

2. Plaintiff Shenzhen EL Lighting Technology Co., LTD ("EL Lighting") is a Shenzhen Corporation with its principal place of business at Rm 403, Jianxing Tower 1, Chaguang Industry Area, West Shahe Rd, Nanshan District, Shenzhen, China.

3. By assignment from Mr. Zhengkai and Mr. Zumi, EL Lighting is the exclusive assignee for the rights conferred under the '725 Patent.

4. On information and belief, Defendant, Midwest Trading Group, Inc. ("Midwest") is an Illinois Corporation with its principle place of business at 1400 Centre Circle Dr., Downers Grove, IL 60515.

5. Defendant, and/or its agents, subsidiaries and affiliates, upon information and belief, sells its infringing products through the brand PowerXcel™ all over the United States, including in the state of Colorado, through retailers such as CVS Pharmacy and www.cvs.com.

6. Defendant, and/or its agents, subsidiaries and affiliates, upon information and belief, at all relevant times have and continue to conduct business in the state of Colorado. Defendant has also committed acts of infringement in the state of Colorado.

7. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, 28U.S.C. § 1332, and 28 U.S.C. § 1338.

8. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400 since the Defendant has committed acts of infringement and conducted business in the state of Colorado and this judicial district.

## GENERAL ALLEGATIONS

9. In the early 2000s, Mr. Yin Zhengkai and Mr. Lu Zumi created, designed, and invented an electroluminescence ("EL") wire along with a method for manufacturing said EL Wire. Following a patent application, Mr. Zhengkai and Mr. Zumi were issued the '725 patent on November 1, 2015 covering this technological advance in the field of electroluminescent products. A copy of the '725 Patent is attached hereto as "Exhibit 1" and incorporated herein.

10. EL Lighting is a manufacturer of EL products, including decorations, cables, wires, cords, etc. EL Lighting has applied the technology disclosed in the '725 patent to consumer

electronics accessories such as power cables, data cables, audio cables and headphones. In the United States, EL Lighting distributes its EL products with the brand name "LIGHT PULSE."




11. EL Lighting has conspicuously and consistently marked its products with the '725 patent since it was issued in November of 2005.

12. By the start of this decade, the demand for all manner of personal electronic devices was surging toward over $1 trillion in sales annually. With the increase in devices designed to meet this demand, the demand for power and data cables for purposes of charging these devices also surged.

13. In 2013, EL Lighting contracted with Shenzhen Xinnengda Technology Co., Ltd., otherwise known as Power4, to assist with the manufacture of EL cords, wires and cables that would meet this growing demand ("Manufacturing Agreement"). Through this relationship, EL

Lighting provided Power4 with manufacturing knowledge and direction regarding the manufacture of EL cables that implement the requirements of Claim 1 of the ‘725 patent.

14. Through the Manufacturing Agreement, Power4 agreed that it would not use the technology gained through the manufacturing partnership to compete with EL Lighting.

15. Through the Manufacturing Agreement, Power4 agreed that it would maintain the confidentiality of all technical data relating to the EL cables that would be manufactured through this relationship.

16. Power4 manufactured the LIGHT PULSE products for EL Lighting and incorporated the requirements of Claim 1 of the ‘725 patent into the products produced for EL Lighting.

17. The manufacturing agreement terminated in 2015 and was not renewed.

18. Power4 did not secure a license from EL Lighting for the use of the ‘725 patent, or any of the confidential manufacturing information secured during the relationship, following the termination of the Manufacturing Agreement.

19. In March of 2017, Defendant began importing, distributing and selling EL products through its brand PowerXcel™ at CVS Pharmacy. Defendant offered its line of “LIGHT-UP” products that infringe Claim 1 of the ‘725 patent. Namely, Defendant offers at least the following Accused Products:

a. LIGHT-UP micro-USB to USB #723080

b. LIGHT-UP micro-USB to USB #722173

c. LIGHT-UP micro-USB to USB #722116

d. LIGHT-UP 8 pin/Lightning to USB #727529

e. LIGHT-UP 8 pin/Lightning to USB #727511

20. The PowerXcel™ LIGHT-UP cables are manufactured by Power4 using the same manufacturing process used to manufacture the LIGHT PULSE products.

21. As confirmed by EL Lighting's engineers by actual inspection of the Accused Products, the PowerXcel™ LIGHT-UP cables specifically feature, either literally or under the doctrine of equivalents, the following elements detailed in Claim 1 of the '725 patent:

| | |
|---|---|
| a. | A transparent and conductive layer that contains a luminescent powder |
| b. | The transparent and conductive layer is covered by a transparent thermoplastic macromolecular polymer and synthetic resin. |
| c. | The thermoplastic macromolecular polymer and synthetic resin are transparent, insulated and dielectric. |
| d. | There are at least two fine conductive wires that wind around the transparent and conductive layer. |
| e. | The thermoplastic macromolecular polymer includes polyvinyl chloride, polyethylene terephthalate, polypropylene, polystyrene, polysulfone, and polycarbonate. |
| f. | The synthetic resin includes organic silicon resin, polyurethane, polyester resin, acrylic resin and epoxy resin. |
| g. | The luminescent powder is made of a mixture of copper and zinc sulfide and organic substances including poly-alkylthrophene, para-phenylethyne and poly-alkylfluorene. |
| h. | The central electrode involves a single non-metal wire comprising multiple non-metal wires which are adhered together using conductive adhesive, conductive flexible tube and weaved tube made from metal and non-metal. |

22. The PowerXcel™ LIGHT-UP cables are a direct copy of the LIGHT PULSE products manufactured by EL Lighting and imported, distributed and sold by EL Lighting at locations such as Staples, Amazon, WalMart and other retail locations.

23. Defendant used or benefitted from the manufacturing knowledge and technical knowhow provided to Power4 through the Manufacturing Agreement including the production of EL products that practice Claim 1 of the '725 patent.

24. Defendant did not, however, secure a license to use the '725 patent from EL Lighting, its agents or assigns, at any time.

25. Defendant is not a beneficiary or licensee of the ‘725 patent by any legal or other means.

26. Defendant, itself and through its respective divisions, subsidiaries, and/or agents are engaged in the business of manufacturing, marketing, distributing, and products that infringe the '725 Patent. Upon information and belief Defendants are selling infringing products to such third-party retailers CVS Pharmacy.

**FIRST CLAIM FOR RELIEF**
**Patent Infringement**

27. EL Lighting incorporates and restates the foregoing allegations as set forth above as though fully set forth herein.

28. The ‘725 Patent is non-obvious as defined in 35 U.S.C. 103.

29. The ‘725 Patent is not subject to prosecution history claim disclaimers.

30. The ‘725 Patent covers the following invention:

> An electroluminescent wire core having a flexible central electrode, a luminescent layer and a transparent, conductive layer. An outer surface of the central electrode is coated with the luminescent layer and the transparent, conductive layer respectively. In the transparent, conductive layer is disposed luminescent power which is covered by thermoplastic macromolecular polymer and synthetic resin.

31. The ‘725 Patent specifically claims:

> 1. An electro luminescence wire core comprising a flexible central electrode, luminescent layer, and a transparent and conductive layer, the outer surface of central electrode being coated with the luminescent layer and the transparent and conductive layer, respectively, wherein:
>
> In the transparent and conductive layer are disposed luminescent powder which is covered by thermoplastic macromolecular polymer and synthetic resin, the thermoplastic macromolecular polymer and the synthetic resin are transparent, insulating, and dielectric, at least two fine conductive wires wind around the transparent and conductive layer; and the thermoplastic macromolecular polymer includes polyvinyl chloride, polyethylene

> terephthalate, polypropylene, polystyrene, polysulfone, and polycarbonate, the synthetic resin includes organic silicon resin, polyurethane, polyester resin, acrylic resin, and epoxy resin;
>
> the luminescent powder in the luminescent layer is made from a mixture of copper and zinc sulfide and organic substances including poly-alkylthrophene, paraphenylethyne, and poly-alkylfluorene;
>
> the central electrode involves single non-metal wire, multiple non-metals wires which are adhered together using conductive adhesive, conductive flexible tube and weaved tube made from metal and non-metal material.

32. Since at least March of 2017 and likely earlier, Defendant and/or their agents were manufacturing, distributing, marketing, and selling infringing products through their distribution channels, including on the internet, throughout the United States, including in the state of Colorado.

33. Defendant has marketed and sold infringing products under its PowerXcel brand as a the PowerXcel™ LIGHT-UP Micro USB to USB and PowerXcel™ LIGHT-UP 8 point/Lightning cables as set forth in Paragraph 19, among others ("Accused Products")

34. Based upon inspection, Defendant's infringing products contain the following elements:

   a. An electroluminescence wire core comprised of a flexible central electrode, luminescent layer, and a transparent and conductive layer.

   b. An outer surface of central electrode that is coated with the luminescent layer and the transparent and conductive layer.

   c. Luminescent powder covered by thermoplastic macromolecular polymer and synthetic resin in the transparent and conductive layer.

   d. Transparent, insulating, and dielectric thermoplastic macromolecular polymer and synthetic resin.

e. At least two fine conductive wires that are wound around the transparent and conductive layer.

f. Thermoplastic macromolecular polymer that includes polyvinyl chloride, polyethylene terephthalate, polypropylene, polystyrene, polysulfone, and polycarbonate, the synthetic resin includes organic silicon resin, polyurethane, polyester resin, acrylic resin, and epoxy resin.

g. Luminescent powder in the luminescent layer that is made from a mixture of copper and zinc sulfide and organic substances including poly-alkylthrophene, paraphenylethyne, and poly-alkylfluorene. and

h. A central electrode that involves single non-metal wire, multiple non-metals wires adhered together using conductive adhesive, and conductive flexible tube and weaved tube made from metal and non-metal materials.

35. Consistent with 35 USC § 287, EL Lighting has marked, or caused to be marked, all of relevant products with the ‘725 patent.

36. Defendants are infringing, literally or under the doctrine of equivalents, the '725 Patent by, *inter alia,* manufacturing, distributing, advertising, marketing and selling the Accused Products. Such infringement is deliberate, willful, and intentional and with full knowledge of the existence and validity of the '725 Patent.

37. The period of infringement is unknown at this time but is ongoing. Defendant’s infringement continues to date and will continue unless Defendant is enjoined by the Court.

38. As a direct and proximate result of Defendant's infringement of the '725 Patent, EL Lighting will suffer damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
**Injunction**

39. EL Lighting incorporates and restates all allegations set forth above as though fully set forth herein.

40. As a direct and proximate result of Defendant's actions of infringing upon the '725 Patent, EL Lighting has suffered, and will continue to suffer, irreparable harm. Defendant's open and notorious infringement of the '725 Patent has fundamentally undermined EL Lighting's ability to commercialize its invention or to otherwise enjoy the benefit of its federally issued patent rights, and prevented EL Lighting from enjoying the benefit of its exclusive rights to the '725 Patent. Defendant's express unwillingness to recognize the '725 Patent and its apparent intention to ignore EL Lighting's rights in and to that patent have and will continue to fundamentally undermine the value of the '725 Patent, for which there is no other remedy at law or equity other than an injunction that will protect EL Lighting's rights.

41. EL Lighting has no adequate remedy at law if Defendant continues to infringe upon the '725 Patent.

42. EL Lighting has suffered, and will continue to suffer, irreparable harm and damage unless preliminary and final injunctions are issued enjoining Defendant from infringing upon the '725 Patent.

43. EL Lighting will likely prevail on the merits of their case at trial.

WHEREFORE, EL Lighting prays for judgment against Defendant as follows:

A. Adjudging that the '725 Patent has been infringed by Defendant;

B. Awarding EL Lighting a preliminary and permanent final injunction against continuing infringement by Defendant;

C. Ordering an accounting of Defendant's sales, profits, cost of goods sold and other relevant financial information as it relates to Defendant's infringing products as specified in this Complaint;

D. Awarding EL Lighting damages against Defendant in an amount adequate to compensate EL Lighting for Defendant's infringement, including lost profits through infringement and price degradation and, at the very least, an amount not less than a reasonable royalty, together with interest and costs;

E. Awarding EL Lighting an additional sum on account of the willful, intentional and deliberate character of Defendant's infringing acts pursuant to 35 U.S.C. § 284;

F. Awarding EL Lighting reasonable attorney fees and costs against Defendant; and

G. Granting EL Lighting all other legal and equitable relief for which EL Lighting are entitled.

**DEMAND FOR JURY TRIAL**

EL Lighting hereby demand a trial by jury on all claims triable to a jury.

Respectfully submitted this 5th Day of May, 2017.

BRADFORD, LTD
*/s/ Aaron P. Bradford*
Aaron P. Bradford, #31115
BRADFORD, LTD
2701 Lawrence St, Ste. 104
Denver, CO 80205
(303)325-3802
aaron@apb-law.com